IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LIBERTY TOWERS PHILLY, LP, | : | |
| | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| vs. | : | NO. 18-CV-4357 |
| | : | |
| AMERICAN TOWER CORPORATION | : | |
| and T-MOBILE USA, | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM AND ORDER

**JOYNER, J.**                                                    March 14, 2019

This case is once again before the Court for disposition of a Motion to Dismiss the Plaintiff's First Amended Complaint – presently the Motion is that of Defendant American Tower Corporation ("ATC"). As explained in the paragraphs which follow, this motion shall also be granted.

### Background

By its First Amended Complaint ("FAC"), Plaintiff alleges that it was the owner of a building located at 1101 North 63rd Street in Philadelphia on October 11, 2016 when "the brick façade of the building suffered severe damage as a result of the negligent installation of … cellular equipment on the roof of the Building." (FAC, ¶12). Plaintiff further contends that

1

this cellular equipment had been installed by Defendant T-Mobile pursuant to a Wireless Communications Easement and Assignment Agreement which its predecessor, Liberty Tower Apartment 2004, L.P. entered into on December 2, 2009 with T6 Unison Site Management, LLC, now known as Ulysses Asset Sub II, LLC. (FAC, ¶ 8). "[T]hough the Agreement was with T6 Unison Site Management, LLC, T-Mobile utilized defendant ATC or its predecessor or related entity to perform or to supervise the installation," but the "installation was performed in a negligent manner in that the cellular equipment was attached directly to a parapet wall on the roof." (FAC, ¶s 9, 10).

Although the precise causes of action are not expressly identified, the First Amended Complaint contains two counts – the first of which is directed against all of the defendants for negligence and the second of which appears to be directed only against Defendant ATC for estoppel. By the motion which is now before us, Defendant ATC moves to dismiss all of the claims against it for lack of standing, failure to plead valid causes of action and on the grounds that the negligence claim is barred by the gist of the action doctrine.

### Standards Governing Motions to Dismiss

Generally speaking, in considering motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the district courts must accept the facts as alleged in the Complaint and all reasonable

2

inferences that can be drawn from them as true and view them in the light most favorable to the plaintiff. Great Western Mining & Mineral Co. v. Fox, Rothschild, LLP, 615 F.3d 159, 161, n.1 (3d Cir. 2010)(citing Umland v. PLANCO Financial Services, 542 F.3d 59, 64 (3d Cir. 2008)); Krantz v. Prudential Investments Fund Management, 305 F.3d 140, 142 (3d Cir. 2002). In doing so, the courts must consider whether the complaint has alleged enough facts to state a claim to relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed.2d 929, 949 (2007). Although "`Fed. R. Civ. P. 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief,' and that this standard does not require 'detailed factual allegations,'" it is however, "no longer sufficient to allege mere elements of a cause of action." Great Western, 615 F.3d at 176 (quoting Twombly, 550 U.S. at 555). "Instead, a complaint must allege facts suggestive of the proscribed conduct." Umland, supra, (quoting Philips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)). A claim will have facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed.2d 868 (2009).

On the other hand, "[a] motion to dismiss for want of standing is properly brought pursuant to Rule 12(b)(1) because standing is a jurisdictional matter." Constitution Party v. Aichele, 757 F.3d 347, 357 (3d Cir. 2014)(quoting Ballentine v. United States, 486 F.3d 806, 810 (3d Cir. 2007). A district court entertaining a Rule 12(b)(1) motion to dismiss for lack of standing must first ascertain whether it presents a "facial" attack or a "factual" attack on the claim at issue, because that distinction determines how the pleading must be reviewed. Long v. Septa, 903 F.3d 312, 320 (3d Cir. 2018). "A 'facial' attack considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court because, for example, it does not present a question of federal law, or because there is no indication of a diversity of citizenship among the parties or because some other jurisdictional defect is present." Aichele, supra. Such an attack can occur before the moving party has filed an answer or otherwise contested the factual allegations of the complaint." Id.

"A factual attack, in which the defendant contests the truth of the jurisdictional allegations, is a different matter: the court need not treat the allegations as true, and a plenary trial is held to resolve any material factual disputes." Long,

at 320(citing Aichele, supra, and Schuchardt v. President of the United States, 839 F.3d 336, 343 (3d Cir. 2016)).

It has been noted that "[s]tanding requires more than just a 'keen interest in the issue.'" Trump v. Hawaii, 138 S. Ct. 2392, 2416, 201 L. Ed.2d 775 (2018). Indeed, federal courts have authority under Article III of the United States Constitution to decide legal questions only in the course of resolving "Cases" or "Controversies." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547, 194 L. Ed.2d 635 (2016). Therefore, a plaintiff seeking relief in federal court has the burden of establishing that he has standing to do so. Gill v. Whitford, ___U.S.___, 138 S. Ct. 1916, 1923, 201 L. Ed.2d 313 (2018); Perelman v. Perelman, 793 F.3d 368, 373 (3d Cir. 2015). Article III standing requires three key elements:

> First, the plaintiff must have suffered an "injury in fact" – an invasion of a legally protected interest which is concrete and particularized and actual or imminent, not 'conjectural' or 'hypothetical.' Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

Perelman, supra.(quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed.2d 351 (1992)); Long, 903 F.3d at 320-321.

**Discussion**

*A. Standing to Sue*

Defendant ATC, as has Defendant T-Mobile USA, asserts that Plaintiff's claim against it must be dismissed for want of standing. In so doing, ATC also has raised a facial attack to the First Amended Complaint which requires that we view the pleading in the light most favorable to the plaintiff. In applying this principle to the First Amended Complaint, we again note that Plaintiff alleges that on October 11, 2016, the brick façade of a building which it then-owned was severely damaged as a consequence of the improper installation of certain cellular equipment, ostensibly on T-Mobile's behalf, by "ATC or its predecessor or related entity" several years earlier. According to Plaintiff, the installation was negligent because, instead of placing it to stand freely on the roof as was the case with the other cellular equipment, the equipment at issue was attached to the parapet wall on the roof thereby making it more foreseeable that the equipment would cause damage to the structure. (FAC, ¶s 10-11). The FAC further avers that the negligent installation only became known when the damage occurred. (FAC, ¶12).

We find that these averments are enough to confer standing insofar as they assert that the plaintiff itself suffered an actual injury as the result of Moving Defendant's allegedly negligent installation of cellular equipment which would likely

6

be redressed by a decision in Plaintiff's favor. Given our conclusion that the standing requirements are satisfied here, ATC's motion to dismiss on the basis of insufficient standing is denied.

*B. Is Defendant ATC a Proper Party?*

Defendant next submits that Plaintiff's FAC should be dismissed as against it for the reason that it is not a proper party to this litigation. In support of this contention, ATC has attached several documents to its motion which purport to show that it is not a construction company or general contractor, but is rather a real estate investment trust and independent owner, operator and developer of multi-tenant communications real estate whose primary business is the leasing of space on communications sites to wireless service providers, radio and television broadcast companies, wireless data providers, government agencies and municipalities and tenants in a number of other industries. While this may be so, it does not *a fortiori* demonstrate that ATC does not have or never had a business relationship with the Plaintiff or its predecessor, that it was never in the business of performing or supervising the installation of telecommunications equipment or that it therefore could not have had a duty to Plaintiff to perform or to supervise the installation of communications equipment at property owned by Plaintiff. Further discovery into this issue

7

would be warranted and thus ATC's motion to dismiss on the basis of this argument must also be denied.

*C. Gist of the Action Doctrine*

ATC next moves to dismiss Count I of the FAC which sounds in negligence on the grounds that it is barred under the gist of the action doctrine. We agree.

In general terms, the gist of the action doctrine "is designed to maintain the conceptual distinction between breach of contract claims and tort claims." Etoll, Inc. v. Elias Savion Advertising, 2002 PA Super 347, 811 A.2d 10, 14 (Pa. Super. Ct. 2002). It "provides that an alleged tort claim against a party to a contract, based on the party's actions undertaken in the course of carrying out a contractual agreement, is barred when the gist or gravamen of the cause of action stated in the complaint, although sounding in tort, is, in actuality, a claim against the party for breach of its contractual obligations." Bruno v. Erie Insurance Co., 630 Pa. 79, 87, 106 A.3d 48, 53 (Pa. 2014). "The term gist has traditionally been understood to mean 'the ground or essence of a legal action,' while "[g]ravamen is defined as 'the substantial point or essence of a claim, grievance or complaint.'" Id, at notes 1 and 2 (quoting Black's Law Dictionary 711, 721 (8th ed. 2009)). Hence, the doctrine bars a tort action "when the gist or gravamen of the cause of action

stated in the complaint, although sounding in tort is, in actuality, a claim against the party for breach of its contractual obligations." Weinar v. Lex, 2017 PA Super. 398, 176 A.3d 907, 926 (Pa. Super. Ct. 2017).

In determining whether an action is barred by the gist of the action doctrine, the court is charged with examining the factual allegations and asking: "what's this case really about?" Downs v. Andrews, 639 Fed. App'x. 816, 819 (3d Cir. Feb. 10, 2016)(quoting Pediatrix Screening, Inc. v. TeleChem International, Inc., 602 F.3d 541, 550 (3d Cir. 2010). To be sure, the Pennsylvania courts "have cautioned against prematurely dismissing a tort action on the basis of this doctrine, because our rules permit the pleading of tort and contract claims in the alternative." Weinar, supra, (citing Telwell, Inc. v. Grandbridge Real Estate Capital, LLC, 2016 PA Super 159, 143 A.3d 421, 429 (Pa. Super. Ct. 2016) and Pa. R. Civ. P. 1020(c)). "[T]he critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract" is "the nature of the duty alleged to have been breached, as established by the underlying averments supporting the claim in a plaintiff's complaint." Bruno, 630 Pa. at 112, 106 A.3d at 68. Thus, it has been said that the gist of the action doctrine operates to foreclose tort claims:

> "… 1) arising solely from the contractual relationship between the parties; 2) when the alleged duties breached were grounded in the contract itself; 3) where any liability stems from the contract; or 4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim. The critical conceptual distinction between a breach of contract claim and a tort claim is that the former arises out of breaches of duties imposed by mutual consensus agreements between particular individuals, while the latter arises out of **breaches of duties imposed by law as a matter of social policy.**"

B.G. Balmer & Co. v. Frank Crystal & Co., 2016 PA Super 202, 148 A.3d 454, 468-469 (Pa. Super. Ct. 2016)(emphasis in original)(citing Reardon v. Allegheny College, 2007 PA Super 160, 926 A.2d 477, 486-487 (Pa. Super. Ct. 2007)).

Here, Count I of the FAC alleges that "Plaintiff performed all obligations required of it under the Agreement" (¶20); that "defendants were negligent in that they departed from the standard of care in installing their cellular equipment on the roof of the Building," (¶21) and that "[a]s a proximate result of defendants' negligence, plaintiff suffered economic damages in excess of $600,000.00." (¶22). Thus, it appears that the Plaintiff's negligence claim arose solely out of and as a consequence of the terms of a contractual relationship and not out of any broader social duty owed to all individuals. See, Bruno, 106 A.3d at 112. Count I shall therefore be dismissed on the basis of the gist of the action doctrine with leave to

Plaintiff to file a second amended complaint pleading the appropriate cause of action should it wish to do so.

   *D. Estoppel*

In Count II of the FAC, Plaintiff asserts a claim for Estoppel against the moving defendant. The essence of this claim is that because ATC communicated and negotiated with the plaintiff in an attempt to resolve this matter following the loss at issue, ATC held itself out as being the appropriate entity to be engaging in those negotiations and thereby led the plaintiff to believe that it was the proper party. Plaintiff further avers that ATC knew that its subsidiary, Ulysses, was actually the correct entity to be negotiating with Plaintiff and that it should therefore now be estopped from denying legal responsibility for damages.

   Pennsylvania law recognizes the doctrines of equitable and promissory estoppel. Promissory estoppel may serve as an independent cause of action that allows courts to enforce promises unsupported by consideration in order to remedy a manifest injustice. Paul v. Lankenau Hospital, 375 Pa. Super. 1, 9, 543 A.2d 1148, 1152-1153 (Pa. Super. Ct. 1988)(citing Cardamone v. University of Pittsburgh, 253 Pa. Super. 65, 74, 384 A.2d 1228, 1233 (1978)). "The cause of action is made out where the asserted promise is such that: (1) the promisor should reasonably expect to induce a definite action or forbearance on

the part of the promisee; (2) it actually induces such action or forbearance; and (3) injustice can be avoided only by its enforcement." Carlson v. Arnot-Ogden Memorial Hospital, 918 F.2d 411, 416 (3d Cir. 1990); Paul, 543 A. 2d at 1153(quoting Cardamone, supra).

Equitable estoppel, on the other hand, is not a separate cause of action. Carlson, supra.; Broederdorf v. Bacheler, 129 F. Supp. 3d 182, 199 (E.D. Pa. 2015). Rather, equitable estoppel is a defense used to preclude a person from denying or asserting a claim. Carlson, supra.; Paul, 543 A.2d at 1152; Bair v. Purcell, 500 F. Supp. 2d 468, 491 (M.D. PA. 2007). Its elements are: (1) misleading words, conduct, or silence by the party against whom the estoppel is asserted; (2) reasonable reliance on the misrepresentation by the party seeking to assert the estoppel; and (3) no duty of inquiry on the party seeking to assert estoppel. Paul, supra.(citing Stolarick v. Stolarick, 241 Pa. Super. 498, 509, 363 A.2d 793, 799 (1976)). In this manner,

> "[t]he doctrine of equitable estoppel prevents one from doing an act differently than the manner in which another was induced by word or deed to expect. A doctrine sounding in equity, equitable estoppel recognizes that an informal promise implied by one's words, deeds or representations **which leads another to rely justifiably thereon to his own injury or detriment,** may be enforced in equity."

Shedden v. Anadarko E. & P. Co., L.P., 635 Pa. 381, 136 A.3d 485, 492 (Pa. 2016)(emphasis in original)(quoting Novelty

Knitting Mills, Inc. v. Siskind, 500 Pa. 432, 435, 457 A.2d 502, 503 (Pa. 1983)). Stated otherwise, equitable estoppel "arises when a party 'intentionally or through culpable negligence induces another to believe certain facts to exist' and the other party 'rightfully relies and acts on such belief' to its detriment." Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 165 (3d Cir. 2009)(quoting Zitelli v. Dermatology Educ. & Research Foundation, 534 Pa. 360, 633 A.2d 134, 139 (Pa. 1993)).

In this case, although Plaintiff does not specify which type of estoppel it is raising in Count II of its First Amended Complaint, it appears from the allegations outlined above that it indeed is equitable estoppel which is being claimed. Inasmuch as equitable estoppel is not an independent cause of action, we are constrained to dismiss Count II of the FAC as well, albeit with the understanding that equitable estoppel may be properly raised as a defense against ATC should the occasion arise and/or that Plaintiff may file a second amended complaint properly asserting a claim for promissory estoppel.

An appropriate order follows.