**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LIBERTY TOWERS PHILLY LP, <br>           Plaintiff, <br><br>    v. <br><br> ULYSSES ASSET SUB II, LLC, an <br> indirectly held and wholly <br> owned subsidiary of American <br> Tower Corporation, and JOHN <br> DOES/ABC CORP.1-10, <br>           Defendants. | CIVIL ACTION <br><br><br><br> NO.  18-4357 |

**MEMORANDUM**

**Joyner, J.**                                    **July 6, 2020**

Presently before the Court is the Motion for Summary Judgment of Defendant, Ulysses Asset Sub II, LLC.  For the reasons that follow, the Motion will be granted in part and denied in part.

**Factual Background**

This breach of contract action concerns a building located at 1101 North 63rd Street in Philadelphia ("Building") that was allegedly damaged by improperly installed T-Mobile cellular equipment.  Plaintiff Liberty Towers Philly LP alleges that it owned the Building when the Building suffered serious damage as the result of the improper installation on the Building's roof. (Pl. Second Amended Complaint, Doc. No. 24 ¶¶8, 30; Pl. Response in Opposition to Defendant's Motion for Summary Judgment, Doc.

1

No. 44 at 6-7, 26-29; Wireless Communications Easement and
Assignment Agreement, Doc. No. 40, Ex. 1 at 2.)

Before Plaintiff owned the Building, one of Plaintiff's
predecessors entered into agreements leasing the Building's roof
to various companies; one of the agreements included a September
30, 2005 agreement ("T-Mobile Lease") that permitted Omnipoint
Communications Enterprises, L.P. to install cellular equipment
on the roof.  (Doc. No. 24 ¶8; Motion for Summary Judgment of
Defendant, Ulysses Asset Sub II, LLC, Doc. No. 40 at 12-13; Doc.
No. 40, Ex. 1 at 13.)  Later, on December 2, 2009, Plaintiff's
predecessor Liberty Tower Apartments 2004, L.P. entered into the
Wireless Communications Easement and Assignment Agreement
("Agreement") with T6 Unison Site Management, LLC ("Unison"),
now known as Ulysses Asset Sub II, LLC.  (Doc. No. 40, Ex. 1.)
Under the Agreement, Liberty Tower Apartments 2004, L.P.
conveyed an easement to the Building's roof and assigned some of
the rooftop leases – including the September 30, 2005 T-Mobile
Lease – to Unison.  (Doc. No. 24 ¶8; Doc. No. 40 at 13-14.)

Plaintiff avers that, "as a result of misplacement of
cellular equipment to the inside of the parapet wall on the
roof, as opposed to being installed directly on the roof
surface, . . . the façade of the building began to separate as a
result of continued wind pressing against the cell tower which
was attached to the parapet wall."  (Doc. No. 44 at 4; Doc. No.

24 ¶¶12, 13.)  Due to this "misplacement," Plaintiff alleges
that the Building "suffered significant damage" on or around
October 11, 2016, which was when Plaintiff owned the Building.
(Doc. No. 44 at 4; Doc. No. 24 ¶¶12, 13.)  Contending that the
damage "created an unsafe condition requiring immediate repair
as mandated by the City of Philadelphia violation notice,"
(Doc. No. 40 at 4; Doc. No. 44 at 9), Plaintiff remediated the
parapet wall before Defendant inspected the alleged damage.
(Doc. No. 40 at 8; Doc. No. 44 at 16.)  Additionally, Plaintiff
claims that when it eventually sold the Building, the sale price
was lower due to the damage.  (Doc. No. 44 at 13-14.)

Because Unison owned the roof easement and was the assignee
of some of the rooftop leases, including the T-Mobile Lease,
Plaintiff argues that the Agreement imposed upon Defendant an
obligation to properly install the cellular equipment and that
Defendant breached the Agreement by permitting the T-Mobile
equipment to be improperly installed on the parapet wall instead
of on the roof's surface.  (Id. at 26-27.)  Plaintiff brings a
claim against Defendant for breach of contract and seeks damages
exceeding $600,000 to compensate for the cost of the repair and
the diminution of the value of the Building.  (Doc. No. 24 ¶¶20-
31; Doc. No. 44 at 7, 13-14.)  Defendant moves for summary
judgment on constitutional standing and Plaintiff's breach of
contract claim and requests that the Court preclude Plaintiff's

expert testimony under Federal Rule of Evidence 702 and impose sanctions for spoliation of evidence.  (Doc. No. 40 at 21, 23, 26, 31.)

## **Analysis**

### Legal Standard

To obtain summary judgment, a movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Disputes about "material" facts are those that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Once the movant meets its initial burden, the nonmoving party must then "go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial."  Santini v. Fuentes, 795 F.3d 410, 416 (3d Cir. 2015) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)) (internal citations omitted) (emphasis omitted).  A "genuine" dispute exists if the non-movant establishes evidence "such that a reasonable jury could return a verdict" in their favor.  Anderson, 477 U.S. at 248.  "The court must review the record 'taken as a whole.'"  Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150 (2000) (quoting Matsushita, 475 U.S. at 587)).  At summary judgment, we must view the evidence and draw all inferences "in the light most favorable to the party

opposing the motion." Matsushita, 475 U.S. at 587 (quoting

United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)). See

also Horsehead Indus., Inc. v. Paramount Commc'ns, Inc., 258

F.3d 132, 140 (3d Cir. 2001).

Challenge to Subject-Matter Jurisdiction

Defendant contends that Plaintiff lacks constitutional

standing to bring its claim for breach of contract because: (1)

Plaintiff cannot show that Plaintiff – instead of one of

Plaintiff's predecessors – owned the Building at the time of the

alleged improper installation and (2) any claim that Plaintiff

had was extinguished when it sold the Building. (Doc. No. 40 at

29.)

Several principles guide our Article III standing analysis.

The constitutional standing assessment is separate from the

assessment of the merits. Cottrell v. Alcon Labs., 874 F.3d

154, 162 (3d Cir. 2017), cert. denied sub nom. Alcon Labs., Inc.

v. Cottrell, 138 S. Ct. 2029 (2018). See also Davis v. Wells

Fargo, 824 F.3d 333, 348-50 (3rd Cir. 2016); CNA v. United

States, 535 F.3d 132, 145 (3d Cir. 2008), as amended (Sept. 29,

2008). Thus, our standing analysis is limited to whether

Plaintiff has constitutional standing; whether Plaintiff is

entitled to relief for its breach of contract claim is a merits

question that cannot be resolved during the constitutional

standing inquiry. See CNA, 535 F.3d at 145. See also Edmonson

v. Lincoln Nat. Life Ins. Co., 777 F. Supp. 2d 869, 880 (E.D. Pa. 2011).

A facial attack on subject-matter jurisdiction "concerns the actual failure of a [plaintiff's] claims to comport [factually] with the jurisdictional prerequisites." Constitution Party of Pennsylvania v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014) (quoting CNA, 535 F.3d at 139).  Though Defendant brings its Article III subject-matter jurisdiction challenge in a summary judgment motion, we treat its argument as a facial attack because Defendant's argument pertains to whether Plaintiff's asserted facts satisfy subject-matter jurisdiction as a matter of law.  See Robert W. Mauthe, M.D., P.C. v. MCMC LLC, 387 F. Supp. 3d 551, 560 (E.D. Pa. 2019).

In order to satisfy standing requirements under Article III, a plaintiff must adequately allege (1) an injury-in-fact that is (2) "fairly traceable to the defendant's allegedly unlawful conduct and that is (3) likely to be redressed by the requested relief." Lujan v. Defs. of Wildlife, 504 U.S. 555, 590 (1992) (internal citations omitted).  See also Ballentine v. United States, 486 F.3d 806, 814 (3d Cir. 2007).  An injury-in-fact is "an invasion of a legally protected interest which is . . . concrete and particularized[,] . . . actual or imminent, not conjectural or hypothetical . . . ." Ballentine, 486 F.3d at 814.  See also Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1548

(2016), as revised (May 24, 2016); Lujan, 504 U.S. at 560.  The
Supreme Court has recognized that "'legally protected interests'
may arise from the Constitution, from common law, or 'solely by
virtue of "statutes creating legal rights, the invasion of which
creates standing."'"  Cottrell, 874 F.3d at 164 (quoting Lujan,
504 U.S. at 576-78 and Warth v. Seldin, 422 U.S. 490, 500
(1975)).

First, financial harm, even if minor, is a classic type of
injury-in-fact.  Cottrell, 874 F.3d at 163; In re Remicade
Antitrust Litig., 345 F. Supp. 3d 566, 584 (E.D. Pa. 2018).
Here, Plaintiff alleges financial harm stemming from the cost of
repairs and decreased property value.  (Doc. No. 24 ¶¶20-31;
Doc. No. 44 at 13-14.)

Second, for a plaintiff's injury-in fact to be fairly
traceable to a defendant's allegedly unlawful conduct, there
must exist "a causal connection between the injury and the
conduct complained of - the injury has to be 'fairly . . .
trace[able] to the challenged action of the defendant, and not .
. . th[e] result [of] the independent action of some third party
not before the court.'"  Lujan, 504 U.S. at 560.  See also
Cottrell, 874 F.3d at 164.  Here, the cost of repairs and the
lower purchase price that Plaintiff alleges are fairly traceable
to the alleged improper installation.  Thus, as in Cottrell,

Plaintiff's purported injury is fairly traceable to Defendants' alleged breach.

Third, in order to satisfy the "redressability" requirement, it must be "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable [judicial] decision.'"  Lujan, 504 U.S. at 561.  See also Cottrell, 874 F.3d at 162; Remicade, 345 F. Supp. 3d at 584.  It is well-established that money damages redress injuries-in-fact and, thus, satisfy the redressability requirement.  Montanez v. HSBC Mortg. Corp. (USA), 876 F. Supp. 2d 504, 512 (E.D. Pa. 2012).  Here, as a matter of law, the money damages that Plaintiff seeks would redress its alleged injury-in-fact.

Because we find that Plaintiff has adequately alleged constitutional standing regarding its breach of contract claim, we deny Defendant's Motion as to standing.  See Mauthe, 387 F. Supp. 3d at 564.

Jurisdiction under 28 U.S.C. § 1332 and Personal Jurisdiction

Since Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000, subject-matter jurisdiction is proper under 28 U.S.C. § 1332(a)(1).  28 U.S.C. § 1332(a)(1).  (Doc. No. 24 ¶6; Doc. No. 40 at 11.)  We may exercise personal jurisdiction over Defendant because Defendant has litigated the merits of its claim without

contesting personal jurisdiction.  See Richard v. U.S. Airways, Inc., 2011 WL 248446, at *1 (E.D. Pa. Jan. 26, 2011).

Plaintiff's Expert Testimony

Defendant contends that we should strike Plaintiff's expert reports under Federal Rule of Evidence 702.  (Doc. No. 40 at 37, 40, 43, 47.)  Though Defendant brings a summary judgment motion, its challenge to the admissibility of expert testimony should be addressed before its Motion for Summary Judgment on the merits. See Stagnaro v. Target Corp., 2019 WL 1934871, at *5 (E.D. Pa. May 1, 2019), appeal dismissed, 2019 WL 6505830 (3d Cir. July 8, 2019).

Rule 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  Under Rule 702, the Court, acting as the gatekeeper, must evaluate whether an expert 'employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" Stagnaro, 2019 WL 1934871, at *3.  See also Slappy-Sutton v.

Speedway LLC, 2019 WL 3456843, at *2 (E.D. Pa. July 31, 2019).
Expert testimony must meet qualification, reliability, and
fitness thresholds.  Speedway, 2019 WL 3456843, at *2; Stagnaro,
2019 WL 1934871, at *3; Universal Underswriters Ins. Co. v.
Dedicated Logistics, Inc., 2014 WL 7335668, at *11 (W.D. Pa.
Dec. 19, 2014).  The party offering the expert testimony has the
burden to show each threshold by a preponderance of the
evidence.  Speedway, 2019 WL 3456843, at *2; Stagnaro, 2019 WL
1934871, at *3.  With a liberal approach toward admitting expert
testimony, "the rejection of expert testimony is the exception
and not the rule."  Speedway, 2019 WL 3456843, at *2 (internal
quotations omitted).  See also Stagnaro, 2019 WL 1934871, at *3.

**I.   Qualification**

Qualification under Rule 702 turns on whether the expert
has "specialized knowledge" in the area of question.  Speedway,
2019 WL 3456843, at *2 (E.D. Pa. July 31, 2019); Stagnaro, 2019
WL 1934871, at *3; Universal, 2014 WL 7335668, at *11.  Courts
construe the qualification requirement liberally and do not
demand a particular degree, title, or educational background.
Speedway, 2019 WL 3456843, at *2; Stagnaro, 2019 WL 1934871, at
*3; Universal, 2014 WL 7335668, at *11.  Instead, a witness may
be qualified based on experience.  See Stagnaro, 2019 WL
1934871, at *5; Universal, 2014 WL 7335668, at *11.  For
instance, in Stagnaro, the Court found that a professor who

focused on human movement research qualified as an expert in a trip-and-fall case, even though the expert was not an engineer. Stagnaro, 2019 WL 1934871, at *5.

## II.  Reliability

In order for an expert's opinion to be reliable, the opinion "'must be based on the "methods and procedures of science" rather than on "subjective belief or unsupported speculation" . . . .'"  Speedway, 2019 WL 3456843, at *3 (quoting In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 742 (3d Cir. 1994)).  See also Stagnaro, 2019 WL 1934871, at *4; Universal, 2014 WL 7335668, at *12.  The reliability requirement is "flexible."  Speedway, 2019 WL 3456843, at *3; Stagnaro, 2019 WL 1934871, at *4; Universal, 2014 WL 7335668, at *12.

As long as the expert testimony is based on "good grounds, based on what is known," the evidence should be admitted and its vulnerabilities tested by cross-examination or adverse expert opinions.  Speedway, 2019 WL 3456843, at *3; Stagnaro, 2019 WL 1934871, at *4.  Courts may consider the following factors when evaluating reliability: "(1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which

have been established to be reliable; (7) the qualifications of
the expert witness testifying based on the methodology; and (8)
the non-judicial uses to which the method has been put."
Stagnaro, 2019 WL 1934871, at *4.  See also Universal, 2014 WL
7335668, at *12.  Tests and studies are not necessarily required
in order to establish reliability.  Speedway, 2019 WL 3456843,
at *3.  For instance, the Court recently held that an expert's
opinion was reliable, even though no tests or studies were
involved, because the expert "relied on inspections of the scene
of the accident, measurements and photographs taken at the scene
of the accident, surveillance footage of the accident, case
materials including the deposition testimony of plaintiff and
two . . . employees, applicable codes and standards, and his own
expertise as a civil engineer with significant experience . . .
."  Id.

## III.  Relevance

Expert testimony must be "fit," or assist the fact finder
with engaging in factfinding and understanding the evidence.
Id.; Stagnaro, 2019 WL 1934871, at *4, 9.  See also Universal,
2014 WL 7335668, at *15.  Whether the testimony is relevant to
an issue in the case is central to the "fit" requirement.
Speedway, 2019 WL 3456843, at *3; Stagnaro, 2019 WL 1934871, at
*4.  See also Universal, 2014 WL 7335668, at *15.

**IV.  Frank Okonski**

Defendant contends that Okonski is not qualified to testify about causation on the grounds that his educational background is in construction management instead of engineering and that his thirty-five years of experience in evaluating building façades and preparing reports is insufficient to render him qualified as an expert here.  (Doc. No. 40 at 45-46.)  We find that Okonski's extensive experience in analyzing building façades and preparing reports renders him qualified as an expert in this case.  (See id. at 45; Doc. No. 44 at 28.)

Defendant does not appear to challenge the reliability or fitness of Okonski's testimony.  Therefore, we limit our analysis to Defendant's challenge to his qualifications and deny Defendant's Motion as to Okonski's qualification to testify about causation.

**V.  Dennis Lojeski**

Defendant argues that Lojeski is not qualified as an expert regarding causation in this matter.  (Doc. No. 40 at 43.)  Although Plaintiff states that Lojeski is a mason, the president of a masonry company, and that his "work . . . focuses on the damage to the area at issue here – the parapet and façade of the building . . . .," (Doc. No. 44 at 27, 31), Plaintiff has not provided any information indicating Lojeski's education, training, or the extent of his experience in masonry.  Instead,

13

Lojeski's proffered testimony contains only one sentence about his qualifications - that he serves as the president of a masonry company.  (Affidavit of Dennis Lojeski, Doc. No. 40, Ex. 28.)  Lacking information about why Lojeski is qualifed to opine on the cause of the damage, we grant Defendant's Motion as to Lojeski on the issue of causation.

## VI.   Eyal Hakim

Defendant argues that the Court should strike Hakim's testimony as to causation and damages on grounds that Hakim is unqualified and that his testimony is unreliable.  (Doc. No. 40 at 40; Reply Brief of Defendant, Ulysses Asset Sub II, LLC, in Further Support of Its Motion for Summary Judgment, Doc. No. 46 at 17.)  Plaintiff appears to agree that Hakim's expert testimony will not be used as to causation and, instead, seems to seek to use Hakim's expert testimony as to damages only. (Doc. No. 44 at 30.)

### a. Qualification

As a professional public adjustor and certified windstorm appraiser who analyzes the extent of damage to buildings, (id.; Doc. No. 40 at 40; Hakim, Doc. No. 40, Ex. 27), Hakim is qualified to offer expert testimony about the extent of damages here, especially about the purported wind damage to the Building.

### *b. Reliability*

As in <u>Speedway</u>, Hakim analyzed inspection reports and
documents and evaluated the Building using his experience in the
field.  <u>Speedway</u>, 2019 WL 3456843, at *3.  We likewise find that
Hakim's challenged testimony is reliable.

### *c. Relevance*

Hakim's testimony contains a detailed account of the
structural intricacies of the parapet wall.  (See Doc. No. 40,
Ex. 27 at 3-4.)  Thus, his testimony could assist the
factfinder.  Accordingly, we find that Hakim's proffered
testimony is fit.  We deny Defendant's Motion as to Hakim's
opinion on damages.

## Spoliation of Evidence

Because Plaintiff remediated the parapet wall before
Defendant inspected the alleged damage, Defendant contends that
the Court should: (1) prohibit Plaintiff from presenting its
expert reports and testimony and (2) enter summary judgment in
Defendant's favor.  (Doc. No. 40 at 29.)  In response, Plaintiff
contests that because the alleged safety emergency necessitated
immediate repair, a finding of spoliation is inappropriate.
(Doc. No. 44 at 16.)  The parties do not dispute that the
evidence was in Plaintiff's control or the relevance of the
evidence.  (<u>Id.</u> at 15; Doc. No. 40 at 18, 27-29.)  Instead, the
crux of the dispute centers on whether Plaintiff actually

15

suppressed evidence and whether the duty to preserve evidence was reasonably foreseeable.

At the outset, we note that Courts find spoliation of evidence when: "the evidence was in the [nonmovant] party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and, the duty to preserve the evidence was reasonably foreseeable to the party." Bull v. United Parcel Serv., Inc., 665 F.3d 68, 73 (3d Cir. 2012). See also Punch v. Dollar Tree Stores, Inc., 2017 WL 752396, at *4 (W.D. Pa. Feb. 17, 2017), report and recommendation adopted, 2017 WL 1159735 (W.D. Pa. Mar. 29, 2017); Micjan v. Wal-Mart Stores, Inc., 2016 WL 738052, at *7 (W.D. Pa. Feb. 25, 2016); Universal, 2014 WL 7335668, at *4. Importantly, the burden of showing these factors falls on the party requesting a spoliation sanction. Punch, 2017 WL 752396, at *4; Micjan, 2016 WL 738052, at *7. See also Universal, 2014 WL 7335668, at *4.

Bad faith is central to the actual suppression of evidence. Bull, 665 F.3d at 79. See also Punch, 2017 WL 752396, at *5; Micjan, at *7, 10. When evidence "'has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for . . . .,'" Bull, 665 F.3d at 79, Courts do not find bad faith. Id.; Punch, 2017 WL 752396, at *6; Universal, 2014 WL 7335668, at *6. In particular, Courts

16

decline to find bad faith when the evidence was destroyed out of safety concerns.  Punch, 2017 WL 752396, at *5-6.  See also Universal, 2014 WL 7335668, at *6; Micjan, 2016 WL 738052, at *9.  For instance, in Punch, the Court declined to find bad faith when the plaintiff disposed of the object that allegedly harmed his child because, according to the plaintiff's testimony, he wanted to ensure that the object could not again harm his children.  Punch, 2017 WL 752396, at *5-6.

If the Court finds that spoliation occurred, the Court will weigh the following factors to decide whether sanctions are in order: "'1) the degree of fault of the party who altered or destroyed the evidence; 2) the degree of prejudice suffered by the opposing party; and 3) the availability of a lesser sanction that will protect the opposing party's rights and deter future similar conduct.'"  Id. at *6 (quoting Schmid v. Milwaukee Electric Tool Co., 13 F.3d 76, 79 (3d Cir. 1994)).  The Court in Punch found that, in part because the plaintiff did not act in bad faith, the "'drastic sanction' of dismissal" was inappropriate.  Id.  Additionally, in Micjan, the Court opined that when the movant has the opportunity to employ its own experts and to cross-examine the nonmovant's, any prejudice to the movant is less severe, and the "drastic sanction" of barring the nonmovant's experts is unwarranted.  Micjan, 2016 WL 738052, at *8-10.

Here, crucial to Defendant's spoliation request is the factual question of whether the alleged damage posed a safety threat requiring immediate remediation, as Plaintiff avers.  If the damage created a safety threat requiring immediate remediation, as Plaintiff contends, then a finding of spoliation and imposition of the requested sanctions would be inappropriate as a matter of law, which would warrant denying Defendant's Motion as to spoliation.  However, Defendant contests the existence of the damage,  (Doc. No. 40 at 10; Doc. No. 44 at 6), and, further, the record is unclear on whether or not the alleged damage created a safety threat requiring immediate repairs.  (Doc. No. 40 at 10; Doc. No. 44 at 6.)  Thus, Defendant has not met its burden at this juncture. Additionally, where, as here, the movant has, as a matter of law, the opportunity to challenge the nonmovant's experts with its own expert testimony or on cross-examination, the "drastic sanction" of precluding the nonmovant's expert testimony is inappropriate.  See Micjan, 2016 WL 738052, at *8-10.

For the foregoing reasons, we deny Defendant's Motion for Summary Judgment as to its request for spoliation sanctions. See Punch, 2017 WL 752396, at *6, 17; Micjan, 2016 WL 738052, at *10.

<u>Claim for Breach of Contract</u>

To establish breach of contract, a plaintiff must show: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." <u>Rathblott v. PeopleStrategy, Inc.</u>, 685 F. App'x 107, 108 (3d Cir. 2017).  The parties do not dispute the existence of a contract.  Rather, the dispute centers on whether Defendant breached a duty that the Agreement required and, if so, whether the damage flowed from the breach.

## I.   **Breach of Duty**

Plaintiff avers that Defendant, as the easement owner, breached the Agreement by permitting the equipment to be improperly installed on the parapet wall instead of freestanding on the roof.  (Doc. No. 44 at 26-27.)  Defendant argues that Defendant did not have a contractual duty to ensure proper installation of the equipment and that Plaintiff cannot show that Defendant owned the easement at the time of the defective installation.  (Doc. No. 40 at 36.)

When evaluating both contracts and easement grants, Courts must "'ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement.'"  <u>Lower Bucks County Joint Municipal Authority v. Dukes</u>, 2020 WL 2187771, at *4 (Pa. Commw. Ct. May 6, 2020) (quoting <u>Halpin v. LaSalle Univ.</u>, 639 A.2d 37, 39 (Pa. Super.

1994)).  <u>See also</u> <u>Gen. Refractories Co. v. First State Ins. Co.</u>,
94 F. Supp. 3d 649, 657 (E.D. Pa. 2015).  When the terms are
"clear and unambiguous," the Court will determine the parties'
intent from the document itself.  <u>Dukes</u>, 2020 WL 2187771, at *4;
<u>Halpin</u>, 639 A.2d 37, 39 (1994).  <u>See also</u> <u>Gen. Refractories</u>, 94
F. Supp. 3d at 657.  If a contract or easement grant is "is
reasonably susceptible of different constructions and capable of
being understood in more than one sense," then it is ambiguous.
<u>Dukes</u>, 2020 WL 2187771, at *4 (internal quotations omitted).
<u>See also</u> <u>Rathblott</u>, 685 F. App'x at 108; <u>Gen. Refractories</u>, 94
F. Supp. 3d at 658.

 Here, the Agreement states in relevant part:

> 1. <u>Grant of Easement</u>
>  (a) . . . [Liberty Tower Apartments 2004, L.P.]
> grants . . . to Unison:
> > (i) an exclusive easement . . . to . . . the
> > building and other portions of the Property
> > . . . for . . . the construction . . . of
> > towers, antennas, buildings . . . and
> > related facilities (collectively,
> > "Facilities") . . . and
> > (ii) a non-exclusive easement . . . to . . .
> > portions of the Property . . . for the
> > installation . . . of utilities providing
> > service to the . . . Easement and the
> > Facilities . . . and
> > (iii) a non-exclusive easement . . . to . .
> > . portions of the Property . . . to connect
> > the telecommunications equipment to other
> > locations in the building as is necessary to
> > install wiring, electronic equipment and
> > other personal property to support and
> > maintain the Facilities.
> (b) The . . . Easement includes . . . (i) the
> portion of the Property leased by the Site Owner

> under the Existing Agreements, and (ii) the
> portion of the Property upon which any Facilities
> are located on [December 2, 2009] . . . .

(Doc. No. 40, Ex. 1 at 2-3.)  By specifying that the Agreement
confers upon Unison an easement for "the construction . . . of .
. . Facilities [and] for the installation of utilities providing
service to the . . . Easement and the Facilities . . . .," (id.
at 3), and by specifying that the "Easement includes . . . (i)
the portion of the Property leased by the Site Owner under the
Existing Agreements [including the T-Mobile Lease], and (ii) the
portion of the Property upon which any Facilities are located,"
(id.), the Agreement unambiguously places on Unison the burden
of "construction" and "installation" of the cellular equipment.
(See id. at 2-3.)

## II.  Resultant Damages from the Alleged Breach

    Defendant argues: (1) that Plaintiff has offered no
evidence showing when the equipment was installed or that
Defendant owned the easement when the equipment was installed
and (2) that Plaintiff has presented conflicting theories
regarding how the damage arose.  (Doc. No. 40 at 29, 35.)

    Here, the record is unclear on when the allegedly improper
installation occurred and, accordingly, whether Defendant was
responsible for the installation.  Additionally, even if
Defendant's involvement began prior to the installation, the
record is unclear on whether the damage at issue arose from the

installation of the equipment, failure to maintain and repair the equipment and the portion of the property subject to the easement, heavy winds, structural issues with portions of the property outside of the scope of the easement, or some combination of the foregoing.  (See id. at 35-36.)  Because these factual questions pose material disputes of facts, we deny Defendant's Motion for Summary Judgment as to its claim for breach of contract.

## Conclusion

We grant Defendant's Motion as to Lojeski, and we deny Defendant's Motion as to standing, spoliation, the testimony of Okonski and Hakim, and breach of contract.  An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LIBERTY TOWERS PHILLY LP, | CIVIL ACTION |
| Plaintiff, | |
| | |
| v. | |
| | |
| ULYSSES ASSET SUB II, LLC, an indirectly held and wholly owned subsidiary of American Tower Corporation, and JOHN DOES/ABC CORP.1-10, | NO.  18-4357 |
| Defendants. | |

## ORDER

AND NOW, this    6th    day of    July    , 2020, upon consideration of the Motion for Summary Judgment of Defendant, Ulysses Asset Sub II, LLC (Doc. No. 40), it is hereby ORDERED that the Motion for Summary Judgment of Defendant, Ulysses Asset Sub II, LLC (Doc. No. 40) is DENIED in part and GRANTED in part.

BY THE COURT:

s/ J. Curtis Joyner

_____
J. CURTIS JOYNER, J.

23